## ACTIONS IN TORT AGAINST GOVERNMENT CONTROLLED RAILWAYS.

Superior Court of Cincinnati.

CHARLES C. OYLER ET AL V. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY.

Decided, February 6, 1919.

*Proper Party Defendant—In an Action Against a Government Controlled Railway—For Recovery of Damages Due to Negligence— Legal Status of the Companies and of the Director General.*

1. While suits in equity may still be maintained for and against railway companies under Federal control, upon causes of action involving the companies themselves, actions against such roads in their capacity as common carriers are properly brought against the Director General for the reason that they are no longer operating companies, their duties and obligations as common carriers having been transferred to the Director General.

2. The question of right to maintain an action against the sovereign, for negligence in the performance of governmental duties and in the absence of a statute expressly authorizing such action, is not raised for the reason that the Director General has, by a general order, proclaimed his willingness to submit to the jurisdiction of the courts in matters connected with the operation of the railways under his control.

*Harmon, Colston, Goldsmith & Hoadly,* for the motion.
*H. G. Hightower,* contra.

HICKENLOOPER, J.

Heard upon motion to substitute Wm. G. McAdoo, Director General of Railroads, as defendant.

This cause comes up for hearing on two motions, one by Wm. G. McAdoo, Director General of Railroads, and the other by the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, both moving that Wm. G. McAdoo, Director General

of Railroads, be substituted as defendant in this action. The cause of action stated in the petition is for the conversion or wrongful sale of certain oranges, on or about January 15, 1918, while the same were in transit from Cincinnati to Chicago.

Section 1 of the act approved August 29, 1916, entitled "An Act Making Appropriations for the Support of the Army for the Fiscal Year Ending June 30, 1917, and for Other Purposes," provides that "the President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purpose connected with the emergency as may be needful or desirable." A state of war having been declared by the Congress of the United States to exist between the United States and the Imperial German Government and the Imperial and Royal Austro-Hungarian Government, the President of the United States, through the Secretary of War, issued a proclamation on the 26th day of December, 1917, declaring that he took possession and assumed control at 12 o'clock noon on the 28th day of December, 1917, of all railways and systems of transportation.

Some question having arisen as to the extent of the presidential authority in this connection and the legality of Federal control of railways, the Congress of the United States on March 21, 1918, passed the act entitled "An Act to Provide for the Operation of Transportation Systems while under Federal Control, for the Just Compensation of Their Owners, and for Other Purposes." This act of Congress differs in some material respects from the presidential proclamation by which federal control was assumed. The presidential proclamation provided that:

"Said director may perform the duties imposed on him, so long and to such extent as he shall determine, through the boards of directors, receivers, officers and employees of said

systems of transportation. Until and except so far as said director shall from time to time by general or special orders otherwise provide, the boards of directors, receivers, officers and employees of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers, in the names of their respective companies   *   *   *   but suits may be brought by and against said carriers and judgment rendered as ·hitherto until and except so far as said director may, by general or special orders, otherwise determine.''

The act of March 21, 1918, however, while omitting the provision as to the retention of control by the boards of directors and the operation of the roads by them, unless and except as the Director General should by general or special orders otherwise provide does provide ''that carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this˙act or any other act applicable to such federal control or with any order of the President. Action at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law;   *   *   *.''   Apparently assuming to act under the terms of the presidential proclamation above quoted, the Director General of Railroads did, on October 28,.1918, issue General Order No. 50 by which it is ordered ''that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any˙court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against Wm. G. McAdoo, Director General of Railroads, and not otherwise.''

In both the presidential proclamation and the act of March 21, 1918, language is used emphasizing the fact that the con-

trol assumed is the actual control of operation and that such operation is the act of the Director General and not, therefore, the act of the company. As above noted, the President in his proclamation assumed to "take possession and assume control" of the transportation systems and the preamble of Section 1 of the act of March 21, 1918, is "that the President, having in time of war taken over the possession, use, control and operation of certain railroads and systems of transportation, is hereby authorized to agree," etc. Further, under the act of March 21, 1918, all monies and other property derived from the operation of the carriers during federal control are expressly declared the property of the United States and the transportation systems are spoken of as "being operated under a unified and co-ordinated national control and not in competition."

A careful consideration of the various provisions of these acts and the general orders of the Director General of Railroads leads the court to the conclusion that while actions at law and suits in equity may be brought by or against such carriers, and judgments rendered as then provided by law, upon any cause of action existing as against the companies themselves, such companies have not been "operating companies" since federal control went into effect' and the provision of the act of March 21, 1918, that carriers under federal control shall be subject to all laws and liabilities as common carriers is entirely inconsistent with the act of federal operation and therefor wholly without effect. The duties and obligations of the common carrier have, since that time, been the duties and obligations of the Director General of Railroads, and the acts or negligence, if any, have been the acts and negligence of such Director General. The companies have not lost their character of legal entities nor the power to sue and be sued, but their freedom from liability in an action for injury to person or property, or the wrongful conversion thereof is due to the fact that such companies are, legally, liable only for their own acts and not for the acts of the operating power over which they have no direct control. Nor do we think that the fact that this cause of action arose before the Federal Railroad Administra-

tion was fully organized but while the Director General of Railroads was exercising his powers through the boards of directors and officers of the various railroads, in any way changes the fact that the acts of operation were the acts of the Director General of Railroads and not of the companies. The Director General was simply exercising his powers through the agency of the individuals who had theretofore comprised the officers and boards of the companies.

An interesting question might be presented as to the right to maintain an action against the sovereign for negligence in the performance of governmental duties where no statute expressly authorizes such action; but, inasmuch as the Director General of Railroads has, by General Order No. 50, expressly stated his willingness to submit himself to the jurisdiction of the courts in such matters, and he is present in court now asking that he be substituted as defendant in this case, it would seem unnecessary for the court *sua sponte* to raise this question. It is sufficient to say that, in our opinon, the acts complained of are the acts of the Director General of Railroads, and that he is entitled, upon his own motion, to be substituted as party defendant. An entry may be drawn making such substitution.